Case No. 23-1055

_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE EIGHT CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

IZEALL T. COLLINS,

Defendant-Appellant.

_____

Appeal from the United States District Court

For the Western District of Missouri, Western Division

_____

BRIEF OF APPELLANT

_____

Lance M. Haley
4225 W. 107th Street
Overland Park, KS. 66207
(816) 944-6090
haleylawkc@gmail.com
Attorney for Appellant

## <u>SUMMARY OF THE CASE</u>

Defendant was arrested at the Greyhound bus station in Kansas City, Missouri, by the Missouri Western Narcotics Interdiction Task Force for possession of heroin and a gun. He was subsequently charged in a two count federal indictment in relation to that arrest. A motion to suppress the evidence was filed, and a hearing held before the magistrate judge assigned to the case. The motion to suppress the evidence was denied by said Magistrate Court in the Report and Recommendation, and affirmed by the District Court. The Defendant voluntarily elected to take the case to trial and was convicted on both counts by a jury. Defendant was sentenced to a term of imprisonment of two-hundred twenty eight months, and now appeals all of those findings, the jury verdict, and the sentence imposed by the District Court.

Defendant waives oral arguments in this matter.

I

# TABLE OF CONTENTS

Page

Summary of the Case..................................................................I

Table of Contents...................................................................ii

Table of Authorities...............................................................iii

Jurisdictional Statement .........................................................1

Statement of the Issues .........................................................3

Statement of the Case ........................................................4-12

Summary of Argument .......................................................12-13

Argument and Applicable Standard of Review ............................13-15

Conclusion .........................................................................15

Certificate of Service............................................................16

Certificate of Compliance......................................................17

Appellate Case: 23-1055     Page: 3     Date Filed: 08/22/2023 Entry ID: 5308775

# TABLE OF AUTHORITIES

*Katz v. United States*, 389 U.S. 347 1967................................................................12

Oregon v. Elstad, 470 U.S. 298, 306 (1985)...........................................................14

*Segura v. United States*, 468 U.S. 796, 804 (1984)...............................................13

*Terry v. Ohio*, 392 U.S. 1, 16 (1968)................................................................12, 13

*United States v. Anguiano,* 795 F.3rd 873, 878 (8th Cir. 2015).........................3

*United States v. Alatorre*, 863 F.3rd 810 (8th Cir. 2017)....................................3

*United States v. Arvizu*, 534 U.S. 266, 273.........................................................12

*United States v. Bell*, 477 F. 3rd 607, 613 (8th Cir. 2007)...............................4, 15

*United States v. Campa-Fabela*, 210 F.3d 837, 839 (8th Cir. 2000)...............4, 14

*United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002).........................4, 14

*United States v. Collins,* 883 F.3rd 1029, 1031 (8TH Cir. 2018)..................3,11,12

.*United States v. Colton*, 742 F.3rd 345, 348 (8th Cir. 2014).........................4, 14

*United States v. Espino*, 317 F.3d 788, 792 (8th Cir. 2003)...............................14

*United States v. Espinosa*, 300 F.3d 981, 983 (8th Cir. 2002)...........................14

*United States v. Henderson-Durand*, 985 F.2d 970, 975 ( 8th Cir. 2004)..........14

*United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004) ..............................14

*United States v. Lee*, 374 F.3d 637, 644 (8th Cir. 2004)....................................14

*United States v. Roach*, 28 F.3d 729, 736 (8th Cir. 1994)..................................14

iii

Appellate Case: 23-1055     Page: 4     Date Filed: 08/22/2023 Entry ID: 5308775

United States v. Stroh, 176 F.3rd 439, 440 (8th Cir. 1999)..................................14

*United States v. Tamayo-Baez,* 820 F.3rd 308, 312 (8th Cir. 2016).................3, 11

United States v. Wong Sun, 371 U.S. 471, 487 (1963)......................................14

Statutes:

Title 18, United States Code, § 924(c)(1)(A).....................................................1

Title 18, United States Code § 3231...............................................................2

Title 21, United States Code, §§ 841(a)(1) and (b)(1)(A)................................1

Title 28, United States Code § 1291...............................................................10

Other Authorities

4th Amendment, United States Constitution.....................................................12

iv

## JURISDICTIONAL STATEMENT

On March 5, 2019, in the Western District of Missouri, the Appellant, Izeall T. Collins, was charged in a one count criminal complaint in that the defendant, did knowingly and intentionally possess with the intent to distribute, one (1) kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

Subsequently, on March 26, 2019, the Appellant, Izeall Collins, was charged in a two count indictment, as follows: in Count One, that on or about, March 4, 2019, in the Western District of Missouri, did knowingly and intentionally possess with the intent to distribute, one (1) kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A); in Count 2, that on or about March 4, 2019, in the Western District of Missouri, defendant, Izeall T. Collins, did knowingly possess a firearm, to wit: a Keltec MODEL 9mm semi-automatic handgun, bearing Serial Number RY087, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, possession of heroin with intent to distribute, as charged in Count One. All in violation of Title 18, United

Appellate Case: 23-1055    Page: 6    Date Filed: 08/22/2023 Entry ID: 5308775

States Code, Section 924(c)(1)(A).

Jurisdiction in the trial court was based on Title 18 U.S.C. 3231, as Collins was charged with offenses against the laws of the United States.

On February 21, 2022, Defendant filed a Motion to Suppress Illegally Obtained Evidence. (R. Doc. 61, Motion to Suppress Evidence). On March 7, 2022, The government filed a response to said motion to suppress. (R. Doc. 63 Government's Suggestions in Opposition). On March 9, 2022, the hearing on the motion to suppress was held. (R. Doc. 66, Minute Entry) On April 7, 2022 the Honorable Lujuana Counts, Magistrate Judge for the United States District Court, for the Western District of Missouri, issued a Report and Recommendation denying Defendant's Motion to Suppress. (R. Doc. 70, Report and Recommendation on Motion to Suppress) The government filed a responsive pleading. (R. Doc. 77, Government's response to Defendant's Motion to Suppress) Counsel for Defendant elected not to file a reply.

On May 18, 2022, The Honorable D. Gregory Kays, United States District Court Judge, issued an Order adopting the Magistrate Court's Report and Recommendation, thereby denying Defendant's Motion to Suppress Illegally Obtained Evidence. (R. Doc. 85, Order Denying Defendant's Motion to Suppress)

On June 15, 2022, following a two-day trial, the jury found Mr. Collins

2

guilty on both counts, as referenced above. (R. Doc. 106, Jury Verdict) On January

3, 2023, the Honorable Gregory Kays imposed a sentence of imprisonment of 168

months on Count One, and 60 months on Count Two, said sentences to run

consecutively for a total of 228 months.  (R. Doc. 115, Order of Judgment and

Commitment)

On January 9, 2023, Appellant filed a timely Notice of Appeal. (R. Doc.

117, Notice of Appeal) This Court has jurisdiction pursuant to Title 28, United

States Code § 1291, which provides jurisdiction over a final judgment from the

United States District Court.


## STATEMENT OF THE ISSUES

**WHETHER THE MAGISTRATE COURT ERRED IN THE REPORT
AND RECOMMENDATION IN FINDING THAT DEFENDANT'S
MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE
SHOULD BE DENIED AND THE DISTRICT COURT
SUBSEQUENTLY ERRED IN ADOPTING THE REPORT AND
RECOMMENDATION DENYING THE DEFENDANT'S MOTION
TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE**

But see, *United States v. Tamayo-Baez*, 820 F.3rd 308, 312 (8th Cir. 2016);
*United States v. Collins*, 883 F.3rd 1029, 1031 (8th Cir. 2018) (*per curium*);
United States v. Anguiano, 795 F.3rd 873, 878 (8th Cir. 2015); United States
v. Alatorre, 863

3

**WHETHER THE DISTRICT COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR ACQUITTAL AT THE END OF ALL EVIDENCE ON THE BASIS THAT THERE WAS NOT SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION ON EITHER THE DRUG CHARGE OR THE WEAPON CHARGE.**

But see, *United States v. Campa-Fabela*, 210 F.3d 837, 839 (8th Cir. 2000); *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002); *United States v. Bell*, 477 F. 3rd 607, 613 (8th Cir. 2007); *United States v. Colton*, 742 F.3rd 345, 348 (8th Cir. 2014)

**WHETHER THE JURY, AFTER HEARING ALL OF THE EVIDENCE, COULD HAVE FOUND THE DEFENDANT GUILTY ON ANY OF THE CHARGES, IN THAT THE EVIDENCE PRESENTED BY THE GOVERNMENT WAS NOT SUFFICIENT TO SUPPORT A CONVICTION**

But see, *United States v. Campa-Fabela*, 210 F.3d 837, 839 (8th Cir. 2000); *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002); *United States v. Bell*, 477 F. 3rd 607, 613 (8th Cir. 2007); *United States v. Colton*, 742 F.3rd 345, 348 (8th Cir. 2014)

## STATEMENT OF THE CASE

**A. Suppression Hearing:**

The government first called Detective Michael Wells, with the Kansas City, Missouri Police Department. Detective Wells was assigned to the Drug Trafficking Unit, which works in conjunction with the Missouri Western Narcotics Interdiction Task Force (MoWIN). (Supp. Tr. 3, at 12-25; at 4, 1-25; R. Doc. 68)

Detective Wells testified that MoWin works primarily at the Greyhound bus

4

station as well as the Amtrack train station interdicting narcotics trafficking. (Supp. Tr. 4, at 17-25; R. Doc. 68) The Detective then stated on March 4, 2019, at approximately 11:00 A.M., he was working at the Greyhound terminal. He testified that the focus of the team was a bus that originated in Los Angeles, California. This bus was of particular interest because narcotics originating out of California were often carried by passengers traveling from Los Angeles to New York City via Greyhound. (Supp. Tr. 5, at 7-23; R. Doc. 68) That the Task Force had interdicted narcotics trafficking from passengers on buses originating from that area approximately 200 to 300 times since he began working with that group of law enforcement officers. (Supp. Tr. 7, at 3-7; R. Doc. 68)

The detective then testified that there was a surveillance video system at the bus station and it was operational that day. (Supp. Tr. 7, at 9-13; R. Doc. 68) He identified the copy of the video that was introduced as evidence. (Supp. Tr. 7, at 21-25; 8, at 1-6; Gov. Exh. 1; R. Doc. 68)

The Government then played the video, commencing at the 10:46:08 mark and paused at the 10:46:47 mark. Detective Wells identified the bus arriving from the Los Angeles Greyhound hub. (Supp. Tr. 8, at 15-25; Gov. Exh. 1; R. Doc. 68)

Detective Wells then is directed to the video which is paused at the 10:47:41 mark and identifies the Defendant exiting the bus. (Supp. Tr. 10, at 5-

12; Gov. Exh. 1; R. Doc. 68) The video is played and paused once again at the 10:48:12 mark, wherein the detective notes that the Defendant walked down to the outside area where the passengers can go to smoke cigarettes. (Supp. Tr. 12, at 9-15; Gov. Exh. 1; R. Doc. 68)

The detective then testified that he observed the Defendant watching Detective Garcia - who is the K-9 handler, having his dog sniff the passengers luggage as it was being removed from the cargo area underneath the bus. (Supp. Tr. 13, at 1-13; Gov. Exh. 1; R. Doc. 68) There is then a long sequence of testimony regarding Detective Garcia and the K-9 dog moving around both outside and inside the bus. As well as how the team responds if the dog alerts to a particular piece of luggage. (Supp. Tr. 14, at 14-16; Gov. Exh. 1; R. Doc. 68)

Detective Wells then testifies that the Defendant walks toward the front of the bus and is trying to look through the front window at the 10:54:29 mark. (Supp. Tr. 16, at 12-17; Gov. Exh. 1; R. Doc. 68) He then notes that the Defendant enters the bus at the 10:55: 37 mark. (Supp. Tr. 16, at 24-25; Gov. Exh. 1; R. Doc. 68) Collins then exits the bus at the 10:55:52 mark. (Supp. Tr. 17, at 5-6; Gov. Exh. 1; R. Doc. 68)

When asked if he could see into the bus, Detective Wells responded in the affirmative noting that he was viewing the bus from inside the terminal, looking

6

through a window and he could see through the windshield and down the aisle of the bus. (Supp. Tr. 17, at 7-13; Gov. Exh. 1; R. Doc. 68) He observed the Defendant walk about two thirds of the way down the aisle, and then looked down at the seating area. He could see the Defendant's arms and hands. He did not observe the Defendant reach down to retrieve anything. The Defendant just visually inspected the area. (Supp. Tr. 17, at 14-20; Gov. Exh. 1; R. Doc. 68) Nor did he observe the Defendant carry anything into the bus, or off the bus. (Supp. Tr. 17, at 23-25; 18, at 1-2; Gov. Exh. 1; R. Doc. 68)

Detective Wells testified that he had seen this kind of behavior in the past where individuals would re-board the bus after the K-9 unit had completed an inspection of items on the bus to see if their bags had been manipulated or contraband discovered. (Supp. Tr. 18, at 8-16; Gov. Exh. 1; R. Doc. 68) He then testified the Task Force had made approximately 12 to 20 arrests after witnessing similar behavior. (Supp. Tr. 18, at 17-19; Gov. Exh. 1; R. Doc. 68)

Detective Wells then testified that the Defendant walked back down to the smoking area (Supp. Tr. 18, at 25; Gov. Exh. 1; R. Doc. 68). At the 10:58:49 mark he testifies that it was himself and Detective Garcia that boarded the bus, but he doesn't recall why. (Supp. Tr. 19, at 9-11; Gov. Exh. 1; R. Doc. 68)

7

It was only after a brief pause in the proceedings that he suddenly recalls why they went into the bus. (Supp. Tr. 19, at 21-22; Gov. Exh. 1; R. Doc. 68) He then remarks that he and Detective Garcia boarded the bus to inspect the area where the Defendant had been seen in the bus. That they had not seen anything suspicious, did not touch any luggage or other items, and then exited the bus. It was only after the Defendant was arrested that they discovered his property was in one of those rows of seats. (Supp. Tr. 19, at 24-25; 20, at 1-24; Gov. Exh. 1; R. Doc. 68)

At the 11:06:57 mark Detective Wells references the driver relocating the bus to another bay. That the original bay is designed for passengers to disembark so that the workers can clean the bus. Then it is moved to a new location for passengers who are traveling through to re-board, and new passengers can board. (Supp. Tr. 21, at 6-16; Gov. Exh. 1; R. Doc. 68) Detective Wells then notes at the 11:09:36 mark that the passengers are lining up to board the bus. (Supp. Tr. 21, at 14-16; Gov. Exh. 1; R. Doc. 68)

Detective Wells references the fact that he had discussed the Defendant's behavior with other members of the team, and Detective Nelson said he would speak with Mr. Collins before he boarded the bus. (Supp. Tr. 23, at 3-25; 24, at 1-2; Gov. Exh. 1; R. Doc. 68)

8

Detective Wells is asked about this travel route - including the fact that these buses from the West coast also stop in Denver. The detective estimates that they have made roughly 500 arrests where they found drugs, money and weapons (Supp. Tr. 23, at 6-25; Gov. Exh. 1; R. Doc. 68).

On cross examination, Detective Wells identified the bus driver at the 10:47:19 mark as being the man in the black vest over a shirt with blue arms (Supp. Tr. 26, at 16-19; Gov. Exh. 1; R. Doc. 68). The inquiry then turns to Mr. Collins talking to the bus driver before he goes down to the smoking area. (Supp. Tr. 27, at 10-17; Gov. Exh. 1; R. Doc. 68)

Then Detective Wells concedes that there are three people in the smoking area when it's 11 degrees outside. (Supp. Tr. 27, at 18-23; Gov. Exh. 1; R. Doc. 68) He then further admits there are five people down there in the smoking area shortly thereafter. (Supp. Tr. 28, at 7-11; Gov. Exh. 1; R. Doc. 68) Detective Wells even testifies that he is a "winter person." (Supp. Tr. 28, at 14-16; Gov. Exh. 1; R. Doc. 68)

Then the subject turns to whether or not Defendant had a cellular phone in his hand when he exited the bus the first time. When confronted with the video evidence Detective Wells admits you cannot tell if the Defendant had a cell phone in his hand. (Supp. Tr. 29, at 11-20; Gov. Exh. 1; R. Doc. 68)

9

Detective Wells agrees under cross-examination that there are employees on board cleaning the bus. (Supp. Tr. 30, at 10-25; Gov. Exh. 1; R. Doc. 68) As well as that Mr. Collins talks to another employee standing outside the bus. (Supp. Tr. 31, at 15-25; Gov. Exh. 1; R. Doc. 68) Then the employee walks up into the bus, addresses another employee at the back, and then waves Collins onto the bus. (Supp. Tr. 31, at 20-25; 32, at 1-5; Gov. Exh. 1; R. Doc. 68)

The exchange then focuses on Detective Wells field of vision from inside the terminal regarding Collins being two-thirds of the way to the back of the bus. (Supp. Tr. 33, at 1-25; Gov. Exh. 1; R. Doc. 68) The detective admits he could only see the Defendant's head and upper torso. (Supp. Tr. 34, at 4-9; Gov. Exh. 1; R. Doc. 68) Detective Wells then later contradicts himself by saying he could see the Defendant's hands when Mr. Collins was standing near the back of the bus. (Supp. Tr. 37, at 22-25; 38, at 1-4; Gov. Exh. 1; R. Doc. 68)

## SUMMARY OF THE ARGUMENT

The District Court erred in denying Defendant's Motion to Suppress Illegally Obtained Evidence in that the facts and law did not support it's findings and conclusions in the Report and Recommendation of the Magistrate Court.

The District Court erred in denying the Defendant's Motion for Acquittal at the end of the Government's case.

10

Moreover, the jury could not have found the Defendant was guilty as charged for possession with intent to sell and possession of a firearm, and possession of a firearm in furtherance of drug trafficking given the insufficiency of evidence to sustain a conviction.

## ARGUMENT AND APPLICABLE
## STANDARD OF REVIEW

**A. Denial of Appellant's Motion to Suppress**

When a defendant's motion to suppress evidence has been denied this Court will review the respective district court's findings of fact for clear error, but the legal conclusions it reached are reviewed de novo after giving law enforcement inferences their due weight. *United States v. Tamayo-Baez*, 820 F.3rd 308, 312 (8th Cir. 2016), The Court will only reverse a district court's denial of a defendant's motion to suppress evidence if the decision was not supported by substantial evidence, predicated upon an erroneous interpretation of the pertinent law, or it was clearly a mistake based on the complete record before the court. *United States v. Collins*, 883 F.3rd 1029, 1031 (8th Cir. 2018) (*per curium*).

Appellant respectfully submits that the District Court in the present case erred in adopting the finding of facts contained in the Report and Recommendation referenced above as submitted by the Magistrate Court, denying

11

his motion to suppress evidence. Thus, undermining the legal conclusions even when giving law enforcement the due weight of their inferences drawn when arresting Mr. Collins. All of which was in violation of Appellant's constitutional rights under the Fourth Amendment protections against unlawful search and seizures. But see, Id. at 1031.

Pursuant to the Fourth Amendment of the United States Constitution, all warrantless seizures are presumptively unreasonable and invalid. *See, e.g. Katz v. United States,* 389 U.S. 347 (1967). Therefore, when an individual is seized without a warrant, the State has the burden to produce evidence that the detaining officer had, at a bare minimum, a "reasonable and articulable suspicion" to detain the accused. *See Terry v. Ohio*, 392 U.S. 1, 16 (1968)

An investigatory stop is considered a seizure within the meaning of the Fourth Amendment and must be "supported by reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (internal quotation marks omitted**).**

The targeting of Mr. Collins as a subject of interest from the moment he stepped off the bus, begs the question as to whether other reasonable explanations for his behavior were summarily dismissed by law enforcement officers in a rush to judgment without just cause.

12

The speculative explanation by law enforcement officers for Mr. Collins briefly going back on the bus, absent some modicum of nefarious intent, does not stand up to scrutiny given the circumstances. Nor rise to the level of supporting reasonable suspicion to conclude that criminal activity may exist. Particularly if there exists numerous rational alternatives for any generic passenger to briefly return to the bus.

A *Terry* stop is only justified when law enforcement officers are "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 2. A hunch predicated on the thinnest of arguably generic observations does not rise to the legal requirement under the Terry doctrine.

All evidence obtained as a direct result of an unconstitutional search or seizure is subject to suppression under the exclusionary rule. Moreover the scope of the legal doctrine requires that not only must the principle evidence obtained from the illegal search be suppressed, but it also encompasses all derivative evidence discovered thereafter. *Segura v. United States*, 468 U.S. 796, 804 (1984).

Due to the fact that the search and seizure which occurred in this case was prima facie explicitly unreasonable, any and all evidence obtained from it must be suppressed under the exclusionary rule, including any statements made by Mr.

13

Collins during the arrest and subsequent interrogation. (*See United States v. Wong Sun*, 371 U.S. 471, 487 (1963) and *Oregon v. Elstad*, 470 U.S. 298, 306 (1985)

## B. Motion for a Acquittal at the Conclusion of the Government's Case

When a district court denies a motion for acquittal at the conclusion of the Government's evidence or all the evidence, the standard of review for the Court's factual findings is abuse of discretion, and there is a de novo review of the District Court's determination of the sufficiency of the evidence. *United States v.Campa-Fabela*, 210 F.3d 837, 839 (8th Cir. 2000). See also, *United States v. Campos*, 306 F.3rd 577, 579 (8th Cir. 2002); *United States v. Espinosa*, 300 F.3d 981, 983 (8th Cir. 2002); *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004).

When reviewing the sufficiency of the evidence, the facts are reviewed in the light most favorable to the verdict that was rendered, and all reasonable inferences that support the verdict are deemed accepted. United States v. Espino, 317 F.3d 788, 792 (8th Cir. 2003). While the evidence need not preclude the possibility of a result other than a guilty verdict, it is only necessary that the evidence is sufficient to support a finding of guilt beyond a reasonable doubt by a reasonable jury. United States v. Roach, 28 F.3d 729, 736 (8th Cir. 1994); United States v. Stroh, 176 F.3rd 439, 440 (8th Cir. 1999); United States v. Lee, 374 F. 3rd

14

637, 644 (8th Cir. 2004); <u>United States v. Henderson-Durand</u>, 985 F.2d 970, 975 (8th Cir. 1993).

That fact, standing on its own, raises reasonable doubt and therefore warrants dismissal of the drug possession and weapon charge, at the very least. But see, *United States v. Colton*, 742 F.3rd 345, 348 (8th Cir. 2014) ("We review de novo the sufficiency of the evidence to sustain a conviction, viewing the evidence in a light most favorable to the verdict, and accepting all reasonable inferences supporting the verdict.") ("This is a strict standard of review, and we will overturn a conviction 'only if no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt." Id. (quoting *United States v. Bell*, 477 F. 3rd 607, 613 (8th Cir. 2007)

**C. Insufficiency of the Evidence for the Jury to Convict Defendant**

Defendant would rely on the same arguments as submitted above for support of his contention that the evidence was insufficient to support the verdict of guilty, in that the evidentiary and legal issues are indistinguishable.

<u>**CONCLUSION**</u>

There was insufficient evidence to convict on the Possession with intent to sell, and possession of a weapon in furtherance of drug trafficking, thus the District Court's order denying the motion to dismiss was wrongfully given, and warrants

15

an order of dismissal or in the alternative, a retrial on all counts of the indictment.

Defendant waives oral arguments in this matter.

Respectfully submitted,

  /s/ Lance M. Haley
Lance M. Haley MO #37896
4225 W. 107th Street, #7611
Overland Park, KS 66207
PHONE: (913) 396-9996
CELL:   (816) 944-6090
EMAIL: haleylawkc@gmail.com
**Counsel for Appellant**

16

## CERTIFICATE OF SERVICE

The undersigned, Lance M. Haley, does hereby certify that on the 9th day of August, 2023, the foregoing Appellant's Brief, was electronically filed with the Clerk of the United States Court of Appeals, For the Eight Circuit, via the CM/ECF system, which will forward notification of said filing to the following:

Mr. Michael Gans, Chief Clerk
Eight Circuit Court of Appeals
1114 Market Street
St. Louis, Missouri 63101

Robert Smith, Esq.
Assistant United States Attorney
Lead Counsel for the Government
400 E. 9th Street
Kansas City, Missouri 64106

Stephanie Bradshaw, Esq.
Assistant United States Attorney
Co-Counsel for the Government
400 E. 9th Street
Kansas City, Missouri 64106

 /s/ Lance M. Haley
Lance M. Haley
Attorney for Appellant Izeall Collins

17

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENT, AND TYPE-STYLE REQUIREMENTS**

**Type-Volume**

1. This document complies with the word limit of FRAP 27(d)(2)(A) because, excluding the parts of the document that are exempted by FRAP 32(f), this document contains 4375 words.

**Typeface and Type-Style**

2. This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6). The software is utilized is Word Perfect Version Standard 2021, the typeface is Times New Roman, and the type size is 14.

**ATTESTATION AS TO VIRUS SCAN OF APPELLANT'S BRIEF AND ADDENDUM PURSUANT TO 8TH CIR. R. 28A(h)(2)**

Counsel for Appellant affirms that the Appellate Brief and Addendum have been scanned for viruses and are virus-free to the best of his knowledge and belief.